FILED
Samuel L. Kay, Clerk
United States Bankruptcy Court
Savannah, Georgia
By cmurray at 10:03 am, Jun 12, 2008

In the United States Bankruptcy Court
for the
Southern District of Georgia
Savannah Division

| | | |
|---|---|---|
| In the matter of: | ) | |
| | ) | Adversary Proceeding |
| FREDDIE C. GOSS | ) | |
| (Chapter 13 Case Number <u>07-40561</u>) | ) | Number <u>07-4127</u> |
| | ) | |
| *Debtor* | ) | |
| | ) | |
| AGNES EASLEY | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FREDDIE C. GOSS | ) | |
| | ) | |
| *Defendant* | ) | |

## MEMORANDUM AND ORDER
## ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

A trial of the above-captioned adversary proceeding was conducted on May 6, 2008. After consideration of all of the evidence, I enter the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

Debtor, Freddie C. Goss, filed a Chapter 13 bankruptcy on April 17, 2007.

%AO 72A
(Rev. 8/82)

Mr. Goss, age 45, has been a homebuilder for over fifteen years, having built approximately 150 homes during the course of his career, and has also worked in the construction industry as a manager for Syntex Homebuilders. As a result of the downturn in the housing market, he, and many others, were laid off from their jobs at Syntex and similar companies, an event which led to the filing of this Chapter 13.

After he was laid off by Syntex, he formed an independent corporation known as J. R. Goss Construction, Inc. As sole shareholder and president of that company, he entered into an agreement on June 1, 2004, to build a private residence for Plaintiff, Agnes Easley. Exhibit D-1. Mr. Goss provided plans and specifications according to Mrs. Easley's desires. Exhibit D-2.

During the course of their relationship, they agreed to certain modifications to the contract. For example, upon her request, he priced additional costs associated with substituting wood flooring, adding a screened porch, and upgrading cabinets and building a bonus room above the garage. Exhibit D-6. After finalizing the cost of the cabinets and bonus room, Mrs. Easley paid Mr. Goss $7,456.00 by check dated February 23, 2005, for the modifications. Exhibit P-3.

When the home was nearing completion, but before it was finished, Mrs. Easley and Mr. Goss agreed that she could move into the house early because she had sold her residence in Atlanta, Georgia, and was relocating to the Savannah area. Thereafter, on

January 9, 2006, the closing of the purchase of the residence he had built for her was consummated. At that time, she received a credit for amounts previously paid on the contract, and Mr. Goss paid $8,140.24 to settle all accounts and close the transaction. Exhibit D-11.

At the closing, Mr. Goss and Mrs. Easley agreed that there were certain punch-list items that remained to be completed in conformity with their contract. The punch-list with approximately fourteen items was executed by them. Exhibit D-3. Mr. Goss completed many of the items called for on the punch-list. On March 4, 2006, he wrote her a letter outlining the remaining punch-list items that needed to be done and estimated a date of completion. Exhibit D-4.

This action, seeking a determination that a certain debt in the amount of $8,618.30 is nondischargeable, was filed because some of the punch-list items were never completed under circumstances which Mrs. Easley believes amount to a violation of 11 U.S.C. § 523(a)(2). Of the punch-list items unfinished as of March 4, 2006, there is no dispute that items one, four and six have been completed by Mr. Goss. What remain in contention are her assertions that (1) he was obligated to construct a fully enclosed weatherized back porch on the rear of the residence, which cost her $2,400.00 to have constructed by another party; (2) he should have installed a semicircular window over her entrance door with leaded, as opposed to clear, glass to match the windows on either side of the entrance door, at an estimated cost of $1,800.00; and (3) he owes her $893.30 for sod which she purchased, at least some of which he was obligated under the contract to purchase

and install at her home. See Exhibits P-16 & P-6. I will address each of those three contentions in order.

### The Porch

The drawings attached to the initial contract show that Plaintiff's house would have a covered patio set on a foundation flush with the rear wall and roof line. After further consideration, Mrs. Easley wished to enlarge the porch, and as appears on Defendant's Exhibit 6, Mr. Goss quoted her a price of $2,200.00 for "a screened back porch 14x12." When the punch-list was created at the closing, Mr. Goss acknowledged that one of the unfinished items was the "back porch." An unknown person wrote the word "enclosed" next to the typed words "back porch," but no one was able to establish who made that notation. Exhibit D-3. When Mr. Goss made his list of uncompleted punch-list items on March 4, he showed "back porch enclosed" as unfinished.

Mr. Goss testified that he never bid on that additional work anticipating that he would do anything other than extend the roof line of the house to enlarge the back porch so that it protruded beyond the rear foundation of the house as originally drawn and then screen it in. Mrs. Easley asserts that the notation "back porch enclosed" was in conformity with her understanding that the porch would be fully finished with exterior wood siding, double-hung windows, and an exterior door. In fact, this is the work that she had done at her expense for which she claims damages. See Exhibit D-17.

Having considered the testimony of the parties and a review of the documents, I conclude that whether the "back porch enclosed" terminology contemplated only a screened-in enclosure or a fully weatherized exterior is ambiguous. However, Mr. Goss's testimony that he quoted a price of $2,200.00 for the scope of the work he actually performed and in no way intentionally misled Mrs. Easley was credible, no matter what her interpretation of that phrase was.

### The Window

Photographs of the residence clearly show an attractive leaded glass door with an oval window, adjoining panels with leaded glass windows, and a semicircular arched window above the door which has only clear and not leaded glass. Exhibit D-13. Mrs. Easley selected this door from a catalog and believed that the glass over the doorway would match the glass in the door and on either side of the door. When the material was shipped to Mr. Goss for installation in the home, the semicircular arched window arrived with clear glass that did not match the leaded glass, and Mr. Goss installed it as shown in the photograph. It is not clear whether the supplier made a mistake and shipped the wrong glass for the semicircular arched window or whether matching glass for this application was never available from the manufacturer. When the lack of matching glass was pointed out, Mr. Goss made inquiries as to whether he could find a replacement and found it difficult to do so. At one point, he informed Mrs. Easley that there would be an additional cost of approximately $1,800.00. Indeed, Defendant's Exhibit 4 shows that he projected an order date for that glass of April 8, 2006, but the glass was neither ordered nor installed. Mr. Goss testified he could

not find a match for the specialized glass and does not recall quoting the $1,800.00 figure to Mrs. Easley.

### The Sod

The contract provided that Mr. Goss would purchase and install ten pallets of sod around the house. Mrs. Easley informed Mr. Goss that she had found a source for sod that might be cheaper than what he anticipated paying for the sod, but she wanted fifteen pallets rather than ten installed. She purchased that sod paying $893.30. Mr. Goss then personally, and with the help of some of his family members, did unanticipated site preparation, performed some grading and leveling, and installed all but approximately one pallet of the fifteen pallets. Mr. Goss understood that Mrs. Easley had agreed to trade her purchase of all of the sod in exchange for his crew installing five more pallets of sod rather than the ten he was contractually obligated to purchase and install. Mrs. Easley disagrees with that contention and believes that he owes her for the purchase of ten pallets of sod which was his obligation under the original terms of the contract. I conclude that there was no meeting of the minds as to this item, but since Mr. Goss incurred substantial labor expense to install sod which exceeded the volume he was obligated to install and purchase per the contract, the additional labor that he applied to the job is roughly equivalent to her cost of sod which he otherwise would have been required to pay for.

### CONCLUSIONS OF LAW

Since J.R. Goss Construction, Inc. was the entity that received the payment

from Mrs. Easley, Mr. Goss made a preliminary argument that he could not be held individually liable under §523(a)(2)(A). However, "this court has held that officers and directors of corporations may be held liable for the debts of the corporation to the extent of their participation in tortious acts resulting in harm to a third party." Brunswick Floors, Inc. v. McNeal (In re McNeal), Case No. 92-20019, Adv.No. 92-2099, slip op. at 4 (Bankr.S.D. May 21,1993)(Davis, J.); *see also* Matter of Sturgess, Chapter 7 Case No. 90-41750, Adv.No. 90-4210, slip op. at 7 (Bankr.S.D.Ga. May 22, 1991)(Davis, J.). Therefore, Mr. Goss can be held liable if he personally participated in any false pretenses, false representation, or actual fraud against Mrs. Easley.

Debts obtained by fraud are non-dischargeable in a bankruptcy proceeding. Section 523 of the Bankruptcy Code provides in pertinent part:

> (a) A discharge . . . does not discharge an individual debtor from any debt–
>
> (2)    for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement representing the debtor's or an insider's financial condition . . .

11 U.S.C. § 523(a)(2)(A).

The burden of proof in non-dischargeability actions is upon the plaintiff to show by a

preponderance of the evidence that a discharge is not warranted. Grogan v. Garner, 498 U.S. 279, 290, 111 S.Ct. 654, 661, 112 L.Ed. 2d 755 (1991). "The preponderance of the evidence standard, instead of the clear and convincing evidence standard should apply to all of the exceptions to discharge, including the exception to discharge for debts involving a debtor's fraud." Brunswick Floors, Inc. v. McNeal (In re McNeal), Case No. 92-20019, Adv.No. 92-2099, slip op. at 4 (Bankr.S.D. May 1993)(Davis, J.).

In order to preclude the discharge of a particular debt because of fraud, a creditor must prove the following:

> (1) The debtor made a false representation with the purpose and intention of deceiving the creditor;
>
> (2) The creditor relied upon such representation;
>
> (3) The reliance was justifiable; and
>
> (4) The creditor sustained a loss as a result of the representation.

Coastal Bank v. Towery (In re Towery), slip op., 1996 WL 33401191, at *3 (Bankr.S.D.Ga., July 22, 1996)(Davis, J.); *see also* Field v. Mans, 516 U.S. 59, 74, 116 S.Ct. 437, 444, 133 L.Ed.2d 351 (1995)("we hold that §523(a)(2)(A) requires justifiable, but not reasonable, reliance."); City Bank & Trust Co. v. Vann (In re Vann), 67 F.3d 277, 281 (11th Cir. 1995)(adopting the justifiable reliance standard); Schweig v. Hunter (In re Hunter), 780 F.2d 1577, 1579 (11th Cir. 1986) *abrogated by*, Grogan, 498 U.S. 279(establishing the standard

of proof as preponderance rather than clear and convincing); Brunswick Floors, Inc. v. McNeal (In re McNeal), Case No. 92-20019, Adv.No. 92-2099, slip op. at 4 (Bankr.S.D. May 21,1993)(Davis, J.); U.S. Fidelity and Guaranty Co. v. Eunice (In re Eunice), slip op.,1993 WL 13005144, at *3 (Bankr.S.D.Ga. 1993)(Davis, J.); Munch v. Sanders (In re Sanders), slip op., 1993 WL 13004583, at *3 (Bankr.S.D.Ga. June 3, 1993)(Dalis, J.).

In order to be non-dischargeable under § 523(a)(2)(A), "the objecting creditor must show that property was obtained by fraud in the inception. In other words, the original debt must have been incurred through fraudulent conduct." In regards to the timing of the fraud, "[t]he intent to deceive must be present at the time the goods and services are obtained not later." Brunswick Floors, Inc. v. McNeal (In re McNeal), Case No. 92-20019, Adv.No. 92-2099, slip op. at 4 (Bankr.S.D. May 21,1993)(Davis, J.)(internal citations omitted). Since Mr. Goss received all payments from Mrs. Easley at the closing, Mrs. Easley bears the burden to show that Mr. Goss committed fraud at that time and not at a later date.

1) The porch: I find that the evidence is insufficient to establish that Mr. Goss ever committed fraud at the time of the closing in explaining to Mrs. Easley the scope of work that he was obligated to perform on the porch. Rather, it is clear at the closing that he committed to provide an enlarged, covered screened porch and nothing more, and her evidence was insufficient to show that the scope of work which she ultimately had done was mutually contemplated at the time of the closing. I therefore find that he does not owe any debt for the work she contracted others to do on her porch. Since the existence of a debt is

a threshold question in deciding whether the debt is dischargeable, I rule for Defendant on this issue.

2) <u>The semicircular window</u>: The evidence only shows that non-matching glass was shipped to the job site and installed by Mr. Goss. It is not clear whether the matching glass was ever available by purchase from the manufacturer because the brochure from which the selection was made was not placed into evidence and the recollection of the parties is unclear. Nevertheless, Mr. Goss made a commitment to provide glass for the half-round window above the front door and reaffirmed that that was an unfinished item on Defendant's Exhibit 4. In fact, he made some effort to locate it, but never ordered or replaced any glass, and thus I conclude that she has been damaged in the approximate amount of $1,800.00 for the non-conforming glass that apparently both he and she believed could be located and installed in her home. However, there is no evidence that Mr. Goss, at the time the money was exchanged at the closing, intended to not buy and install the leaded glass or misled her in any way. The creditor must show that Mr. Goss "made a false representation with the purpose and intention of deceiving the creditor" at the time the money exchanged hands. <u>In re Towery</u>, 1996 WL 33401191, at *3. The evidence showed that Mr. Goss did look for the glass at some point after the closing in a good faith effort to fulfill his promise. Therefore, I find that the evidence is insufficient to prove that he had any intent to defraud at the time of the closing as is necessary for a finding that the debt is nondischargeable.

3) <u>The sod</u>: I find that there was no meeting of the minds as to whether the

additional labor for sod was an offsetting credit he was entitled to set-off against the purchase of the sod which she made from her funds. However, the creditor must show that it "sustained a loss as a result of the fraudulent representation." Id. Since he provided labor for fifteen pallets of sod, but did not pay for the materials, I find that Mrs. Easley was not damaged by any action on his part, thus Mrs. Easley did not carry her burden of proof.

In addition, the other items for which Mrs. Easley claims damages include additional plants that were to be planted in her yard by Mr. Goss, grading and seeding of grass that was not sodded, and touch up painting services totaling approximately $3,500.00. Mr. Goss was not sure if he seeded the sides and back of the house, and Lori Glazer, Mrs. Easley's granddaughter, testified that the yard was never seeded. However, I find that Mr. Goss, in fact, installed landscaping plant materials, performed all grading and at least some grass seeding contemplated by the contract, and made numerous trips to do interior touch up painting. Even if the quality of these services or the amount of material installed did not match the precise requirements of the contract or Mrs. Easley's expectations, I conclude that material and services were rendered in each of these areas that are roughly equivalent to Mr. Goss's obligations under the contract. I also find that there is no evidence suggesting that at the time of the closing, Mr. Goss intended to defraud Mrs. Easley.

Accordingly, the complaint seeking a determination of dischargeability is denied, and Debtor is entitled to a discharge of any obligations owed to the Plaintiff under his construction contract and related dealings.

## ORDER

Pursuant to the foregoing Findings of Fact and Conclusions of Law, IT IS THE ORDER OF THIS COURT that the complaint of Agnes Easley seeking a determination of dischargeability is DENIED.

IT IS FURTHER ORDERED that the Debtor, Freddie C. Goss, is entitled to a discharge of any obligations owed to the Plaintiff, Agnes Easley, under his construction contract and related dealings.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia
This  day of June, 2008.